IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

**JONATHAN HEDENBERG,**

       Petitioner,

       v.

**NEIL TURNER, WARDEN,**

       Respondent.

Case No. 1:16 CV 3106

Judge Jeffrey J. Helmick

Magistrate Judge James R. Knepp, II

ORDER DENYING MOTION AND
REPORT AND RECOMMENDATION

### INTRODUCTION

*Pro se* Petitioner Jonathan Hedenberg ("Petitioner"), a prisoner in state custody, filed a Petition seeking a writ of habeas corpus under 28 U.S.C. § 2254 ("Petition"). (Doc. 1). Respondent Warden Neil Turner ("Respondent") filed an answer (Doc. 5) and Petitioner filed a reply (Doc. 8). Petitioner also filed a Motion to Expand the Record (Doc. 7); Respondent opposed (Doc. 9); and Petitioner replied (Doc. 10). The district court has jurisdiction over the Petition under § 2254(a). This matter has been referred to the undersigned for a Report and Recommendation pursuant to Local Rule 72.2(b)(2). (Non-document entry dated February 10, 2017). For the reasons discussed below, the undersigned recommends the Petition (Doc. 1) be denied. Additionally, the undersigned denies Petitioner's Motion to Expand the Record (Doc. 7).

### FACTUAL BACKGROUND

For the purposes of habeas corpus review of state court decisions, findings of fact made by a state court are presumed correct and can only be contravened if the habeas petitioner shows, by clear and convincing evidence, erroneous factual findings by the state court. § 2254(e)(1); *Moore v. Mitchell*, 708 F.3d 760, 775 (6th Cir. 2013); *Mitzel v. Tate*, 267 F.3d 524, 530 (6th Cir. 2001).

This presumption of correctness applies to factual findings made by a state court of appeals based on the state trial court record. *Mitzel*, 267 F.3d at 530.  The Ohio appellate court here explained:

> {¶ 4} Hedenberg initially was indicted in Cuyahoga C.P. No. CR–12–569273 with three codefendants. The charges against Hedenberg consisted of three counts of rape of a child under ten years of age, with sexually violent predator specifications ("SVPs"), one count of kidnapping, with sexual motivation specifications and an SVP, and one count of disseminating matter harmful to juveniles, with a furthermore clause that the victim was under the age of 13.

> {¶ 5} Hedenberg was later charged in Cuyahoga C.P. No. CR–13–575797 with two counts of rape of a child under ten years of age, two counts of gross sexual imposition ("GSI"), and one count of kidnapping a child under the age of 18. All of the counts carried SVPs, and the kidnapping count carried a sexual motivation specification. The two cases pertained to two different victims.

> {¶ 6} On the scheduled date of trial, the parties arranged plea deals in the cases for Hedenberg and his three codefendants. The state agreed in exchange for Hedenberg's guilty pleas to amend the indictment in Cuyahoga C.P. No. CR–12–569273 to one count of forcible rape and one count of GSI, with the SVPs deleted, and to dismiss the other counts. In Cuyahoga C.P. No. CR–13–575797, the state agreed to amend the indictment to one count of forcible rape with the SVPs deleted, leave the GSI as indicted, and the state would dismiss the other counts. Thus, in each case, Hedenberg would plead guilty to one first-degree felony rape, and one third-degree felony GSI. The prosecutor noted for the record that Hedenberg would be classified "as a Tier III sex offender with lifetime registration and verification every 90 days."

> {¶ 7} In conducting the plea colloquy, the trial court asked Hedenberg if he was "able to understand this proceeding as it [was] occurring." Hedenberg answered, "Yes, your Honor." The trial court encouraged him to stop the proceeding if he did not understand, was confused, or disagreed with anyone's statement. Hedenberg agreed to do so.

> {¶ 8} The trial court also asked if Hedenberg currently was "under the influence of drugs," and he responded that he took "Neurontin and Paxil" for "[s]ystemic Lupus. Nerve issues." The trial court stated, "Just to be clear, those are [medications] that actually help you to continue to function with your Lupus disease, do not impair your ability to think. Is that correct?" Hedenberg answered, "Technically, no, they do not."

> {¶ 9} The trial court carefully explained each of the constitutional rights the defendants would be waiving in entering their guilty pleas, and then explained to each defendant the maximum sentences and fines that could be imposed. The court informed Hedenberg that he also would be "classified as a Tier Three sex offender,

which the court will explain to you at a later time." Hedenberg indicated that he understood. The trial court accepted Hedenberg's guilty pleas and referred him to the probation department for a presentence report.

{¶ 10} When the trial court called the matter for sentencing, Hedenberg stated that he "would like to withdraw [his] plea." The court asked for the basis of his request, to which Hedenberg responded, "I'm not guilty." At that, the trial court reminded him that "you said you were guilty and the Court reviewed with you all of your rights, all the things that you were afforded, and you indicated to the Court that you understood. Did you not understand?"

{¶ 11} Hedenberg asserted, "No, I understood, but I didn't understand what I could—what my options were." The trial court repeated that it had reviewed his options with him and again asked whether he did not understand what was said to him; this time, Hedenberg claimed, "Not completely then." In response to the question, "What didn't you understand?"—Hedenberg simply stated that he had "changed [his] mind" immediately after the plea hearing. The trial court decided his guilty pleas had been knowing and voluntary, and denied his request to withdraw them. Thereafter, the trial court imposed sentences of 11 years and 60 months in Cuyahoga C.P. No. 12–CR–569273, and 11 years and 60 months in Cuyahoga C.P. No. CR–13–575797. The court further ordered the sentences in each case to be served consecutively to the other, for a total prison term of 32 years. As a result, Hedenberg filed this timely appeal.

*State v. Hedenberg*, 2015 WL 7075821.

Petitioner asserts he can rebut the facts found by the appellate court on direct appeal. *See* Doc. 8, at 1-2. First, he asserts he told the trial court he took Plaquenil, not Paxil. Even if Petitioner could satisfy the "clear and convincing evidence" standard to rebut the state court's factual finding on this point, it would be irrelevant. This is so because the state court did not rely on anything related to the particular medication, but explained that Petitioner "agreed that the medication did not affect his understanding" and therefore no further inquiry by the trial judge was required.

Next, Petitioner contends the appellate court misrepresented his statement about changing his mind, contending it was a statement about a change of mind *pre-plea*, rather *post-plea*. In its summary of the facts, the appellate court found: "In response to the question, 'What didn't you understand?'—Hedenberg simply stated that he had 'changed [his] mind' immediately *after* the

plea hearing." *Hedenberg*, 2015 WL 7075821, at *2 (emphasis added). Petitioner points to this exchange at his sentencing hearing:

| | |
|---|---|
| THE COURT: | Mr. Jonathan Hedenberg, is there anything you should like to say before the Court announces its sentence? |
| DEFENDANT: | I would like to withdraw my plea. |
| THE COURT: | And based on what? |
| DEFENDANT: | I'm not guilty. |
| THE COURT: | Well, you said you were guilty and the Court reviewed with you all of your rights, all the things that you were afforded, and you indicated to the Court that you understood. Did you not understand? |
| DEFENDANT: | No, I understood, but I didn't understand what I could - - what my options were. |
| THE COURT: | Well, the Court reviewed with you your options. You didn't understand what the Court said to you? |
| DEFENDANT: | Not completely then. |
| THE COURT: | What didn't you understand? |
| DEFENDANT: | When I was back there with Mr. Carlos Johnson, I changed my mind after I agreed to accept the plea. He told me I couldn't do that before I came out here, so I thought - - |
| THE COURT: | But when you stood before me, this Court reviewed with you your rights. Did you understand them? |
| DEFENDANT: | Yes. |
| THE COURT: | The Court finds that it was a knowing, voluntary plea. Is there anything else that you would like to say? |
| DEFENDANT: | I disagree with the Court. |
| THE COURT: | Good. Sir, is there anything that you would like to say? |
| DEFENDANT: | Your Honor, I also wish to withdraw my plea. I feel that I was not able to make an educated decision and that I took |

4

> the plea - - and I do understand that I knowingly took the plea - - but I feel that I took the plea out of fear of doing life without parole and losing the opportunity to ever see my kids again. I never hurt my kids. They're my world.

(Doc. 6-1, at 72-74). On direct appeal, the appellate court rejected Petitioner's challenge to the trial court's denial of his motion to withdraw his guilty plea:

> {¶ 20} Hedenberg argues in his second assignment of error that the trial court improperly denied his pro se presentence motion to withdraw his guilty pleas. In ruling on a presentence motion to withdraw a plea, the court must conduct a hearing and decide whether there is a reasonable and legitimate basis for withdrawal of the plea. *Id.* at 527, 450 N.E.2d 1140. This court has held that,

> > A trial court does not abuse its discretion in overruling a motion to withdraw: (1) where the accused is represented by highly competent counsel, (2) where the accused was afforded a full hearing, pursuant to Crim.R. 11, before he entered the plea, (3) when, after the motion to withdraw is filed, the accused is given a complete and impartial hearing on the motion, and (4) where the record reveals that the court gave full and fair consideration to the plea withdrawal request. *State v. Tucker,* 8th Dist. Cuyahoga No. 97981, 2012–Ohio–5067, ¶ 7, quoting *State v. Peterseim,* 68 Ohio App.2d 211, 214, 428 N.E.2d 863 (8th Dist.1980), paragraph three of the syllabus.

> > {¶ 21} The record demonstrates all of the above conditions were met. In the underlying proceedings, 1) Hedenberg had competent counsel who, in the face of the numerous and serious crimes alleged against his client, arranged for him an advantageous plea agreement, 2) the trial court substantially complied with its duties under Crim .R. 11(C)(2) before accepting Hedenberg's guilty pleas, 3) the trial court conducted a complete and impartial hearing on his motion, and 4) the trial court gave full and fair consideration to his motion. The best explanation Hedenberg offered for presenting his motion was that he "changed his mind." The trial court acted well within its discretion to reject this as a legitimate basis upon which to grant Hedenberg's motion. *State v. Sandridge,* 8th Dist. Cuyahoga No. 101653, 2015–Ohio–1541, ¶ 30; *State v. Hurst,* 8th Dist. No. 89297, 2007–Ohio–6326, ¶ 8. His second assignment of error, accordingly, is overruled.

2015 WL 7075821, at *4-5. Petitioner's argument about whether this was a pre-plea or post-plea statement is ultimately directed at the merits of Petitioner's underlying claim that his plea was not knowingly and voluntarily made. However, as discussed further  below, Petitioner defaulted that claim when he failed to appeal it to the Ohio Supreme Court, and Petitioner cannot use his

otherwise-defaulted ineffective assistance of appellate counsel claim to excuse that default. Therefore, the undersigned concludes that even if Petitioner could show this factual finding to be incorrect by clear and convincing evidence, it would not affect the outcome of the Petition.

### PROCEDURAL HISTORY

State Court Conviction

In April 2013, a Cuyahoga County Grand Jury indicted Plaintiff on three counts of rape of a child under thirteen years of age in violation of Ohio Revised Code § 2907.02(A)(1)(b), with sexually violent predator specifications; one count of kidnapping of a child under thirteen years of age, in violation of Ohio Revised Code § 2905.01(A)(4), with both sexual motivation and sexually violent predator specifications; and one count of disseminating matter harmful to juveniles in violation of Ohio Revised Code § 2907.31(A)(3). (Ex. 1, Doc. 5-1, at 8-10). Petitioner pleaded not guilty. (Ex. 2, Doc. 5-1, at 12). In August 2013, Petitioner was indicted on two more counts of rape of a child under thirteen years of age in violation of Ohio Revised Code § 2907.02(A)(1)(b), with sexually violent predator specifications; two counts of gross sexual imposition of a child under thirteen years of age in violation of Ohio Revised Code § 2907.05(A)(4), with sexually violent predator specifications; and one additional count of kidnapping of a child under thirteen years of age in violation of Ohio Revised Code § 2905.01(A)(4)), with sexual motivation and sexually violent predator specifications. (Ex. 3, Doc. 5-1, at 13-15). Petitioner again pleaded not guilty. (Ex. 4, Doc. 5-1, at 16).

Following plea negotiations, Petitioner pleaded guilty to—on the first indictment—one amended count of rape (in violation of Ohio Revised Code § 2907.02(A)(2)), and one amended count of gross sexual imposition. (Ex. 5, Doc. 5-1, at 17). The sexually violent predator specifications on these counts were dismissed. *Id.* Petitioner also pleaded guilty to—on the second

indictment—one amended count of rape in violation of § 2907.02(A)(1), and one amended count of gross sexual imposition, both without the sexually violent predator specifications. *Id.* Petitioner was classified as a Tier III sex offender. *Id.* The State dismissed the remaining charges in both indictments. *Id.* On October 1, 2013, the trial court held a Rule 11 colloquy, and accepted Petitioner's guilty pleas. (Ex. 5-6, Doc. 5-1, at 16-17); *see also* Doc. 6-1, at 48-63 (transcript of plea colloquy).

On October 7, 2013, Petitioner filed a *pro se* motion to withdraw his guilty plea. (Ex. 7, Doc. 5-1, at 19-21). In it, he alleged he did not receive adequate representation, was misled about his ability to withdraw his plea, the plea was made under duress, and he was not given ample time to review the evidence against him. *Id.* At his sentencing hearing on October 30, 2013, Petitioner stated he wanted to withdraw his guilty plea. (Doc. 6-1, at 72). After inquiring, the trial court denied Petitioner's motion to withdraw his plea. (Doc. 6-1, at 72-74). The court sentenced Petitioner to 11 years for each rape conviction, and five years for each gross sexual imposition conviction, all to run consecutively for an aggregate sentence of 32 years in prison. (Exs. 8 & 9, Doc. 5-1, at 22-23); *see also* Doc. 6-1, at 88-95.

Petitioner did not timely appeal this decision.

Delayed Direct Appeal

On October 27, 2014, Petitioner filed a *pro se* untimely notice of appeal in the Eighth District Court of Appeals. (Ex. 10, Doc. 5-1, at 24-34). He also filed a motion for leave to file delayed appeal. (Ex. 11, Doc. 5-1, at 35-50). In that motion, Petitioner asserted: counsel failed to file a timely appeal despite Petitioner's request; his indigence caused problems financing the appeal; he lacked knowledge of the law; he had legal materials and postage stolen from him; and his prior counsel did not promptly provide him discovery documents. *Id.* at 38.

The appellate court granted leave to appeal. (Ex. 12, Doc. 5-1, at 51). Petitioner, through counsel, raised three assignments of error in his merits brief:

1.  Appellant did not make a knowing, voluntary, and intelligent plea of guilty in the Lower Court.

2.  The Trial Court erred in denying Appellant's Motion to Withdraw his Previously Entered Guilty Plea

3.  The Trial Court failed to make the statutorily-required findings necessary to impose consecutive prison Sentences.

(Ex. 13, Doc. 5-1, at 53). The State filed a brief in response. (Ex. 14, Doc. 5-1, at 71-86).

On November 12, 2015, the appellate court overruled all three assignments of error. (Ex. 15, Doc. 5-1, at 87-102); *Hedenberg*, 2015 WL 7075821. The appellate court did, however, remand the case to the trial court for the purpose of a *nunc pro tunc* entry to include the necessary findings for consecutive sentences (which the trial court made at the hearing, but failed to include in the judgment entries). *Id*.

On January 5, 2016, Petitioner, acting *pro se*, filed an untimely notice of appeal with the Ohio Supreme Court. (Ex. 16, Doc. 5-1, at 103-04). In an accompanying motion for delayed appeal, Petitioner asserted he "attempted to file but filed under the wrong rules". (Ex. 7, Doc. 5-1, at 107). On February 24, 2016, the Ohio Supreme Court denied Petitioner's motion for leave to file a delayed appeal, and dismissed the case. (Ex. 18, Doc. 5-1, at 125).

Rule 26(B) Application to Reopen

On February 17, 2016, Petitioner, *pro se*, filed an untimely Ohio Appellate Rule 26(B) application to reopen his direct appeal. (Ex. 19, Doc. 5-1, at 126-46). In the application, Petitioner asserted appellate counsel ineffectively argued the claims he did raise, and was also ineffective in failing to raise four additional assignments of error:

1. The Trial Court erred in allowing counsel, Autumn Basil to withdraw from the case;

2. The Trial Court did not afford the Appellant proper counsel in the Lower Court violating his constitutional right to counsel;

3. Trial Court Counsel was Ineffective;

4. Trial Court failed to ensure a Subpoena was carried out.

*Id.* at 128. Petitioner also filed a motion for delayed re-opening pursuant to Rule 26(B). (Ex. 20,

Doc. 5-1, at 147-54). Petitioner asserted three reasons for his delay:

(1) The appellant had inadequate access to the law library, legal resources, and coping [sic] facilities;

(2) The appellant was delayed from being able to review the necessary parts of the record in order to support his claims;

(3) The appellant made an attempt to send the items "NEXT DAY" mail but, the institution did not facilitate his request.

*Id.* at 148. He attached an affidavit explaining further the details he asserted provided "good cause"

for the delay. *Id.* at 149-50. The State filed a motion to dismiss the delayed application for

reopening, or in the alternative, an opposition. (Ex. 21, Doc. 5-1, at 155-62). Petitioner filed a

reply. (Ex. 22, Doc. 5-1, at 163-75).

On June 3, 2016, the appellate court denied Petitioner's application, holding he had not

established good cause for his untimely filing. (Ex. 23, Doc. 5-1, at 176-83); *State v. Hedenberg*,

2016 WL 3194241 (Ohio Ct. App.). Additionally, the appellate court held Petitioner failed to

follow Appellate Rule 26(B)(2)(d). *Id.*

On July 14, 2016, Petitioner filed a timely *pro se* notice of appeal to the Supreme Court of

Ohio. (Ex. 24, Doc. 5-1, at 184-86). In his memorandum in support of jurisdiction, Petitioner

asserted five propositions of law:

1. An appellate court commits reversible error, to the prejudice of an appellant-applicant, when the court fails to demonstrate lack of "good cause" in an untimely filing pursuant to App.R.26(B)(2)(b) and/or when the court improperly decides a case lacks "good cause" pursuant to App.R.26(B)(2)(b).

2. An appellate court commits reversible error, to the prejudice of an appellant-applicant, in holding the appellant failed to comply with App. R 26(B)(2)(d).

3. An appellate court commits reversible error, to the prejudice of an appellant-applicant, in holding that the entry of a guilty plea removed the issue of factual guilt.

4. An appellate court commits reversible error, to the prejudice of an appellant-applicant, in holding that the Appellant waived the right to claim ineffective assistance of trial counsel.

5. An appellate court commits reversible error, to the prejudice of an appellant-applicant, in failing to make any findings on applicants [sic] sixth assignment of error.

(Ex. 25, Doc. 5-1, at 188). The State waived a response. (Ex. 26, Doc. 5-1, at 219). On September 14, 2016, the Ohio Supreme Court declined to accept jurisdiction of the appeal. (Ex. 27, Doc. 5-1, at 220).

Resentencing

Pursuant to the appellate court's remand for resentencing, the trial court entered *nunc pro tunc* sentencing journal entries on May 12, 2016, including the necessary findings for consecutive sentencing. (Exs. 28 & 29, Doc. 5-1, at 221-24). Petitioner did not further appeal this decision.

## FEDERAL HABEAS CORPUS

Petitioner then filed a *pro se* Petition with the United States District Court on December 15, 2016[1]. (Doc. 1). Petitioner raises eight grounds for relief:

**GROUND ONE:** Ineffective Assistance of Trial Counsel.
      I.      Counsel did not Properly Withdraw from Case.

---

1. Under the prison mailbox rule, a *pro se* prisoner's pleading "is deemed filed when the inmate gives the document to prison officials to be mailed." *In re: Prison Litig. Reform Act*, 105 F.3d 1131, 1132 (6th Cir. 1997) (citing *Houston v. Lack*, 487 U.S. 266, 270 (1988)).

II.    Counsel Failed to file Notice of Entry.
III.   Counsel was not Properly Prepared to Advise the Petitioner.

**GROUND TWO:** Did the Petitioner made [sic] a knowing, voluntary, and intelligent plea in the Lower Court.

**GROUND THREE:** Did the Trial Court abuse its discretion when it denied the Petitioner's pre-sentence motion to withdraw his guilty plea?

**GROUND FOUR:** The trial court committed a *plain error* in allowing trial counsel to withdraw without complying with the established rules of the court.

**GROUND FIVE:** The Trial Court committed a *plain error* in allowing a substitution of counsel in a manner contrary to law.

**GROUND SIX:** The trial court committed a *plain error* when they failed to conduct proceeding necessary to carrying out a subpoena.

**GROUND SEVEN:** Ineffective Assistance of Appellate Counsel

**GROUND EIGHT:** The Appellate court erred in not reviewing the application for reopening on its merits due to procedural issues and untimeliness.

(Doc. 1, at 7-24).

## STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") "dictates a highly deferential standard for evaluating state-court rulings which demands that state court decisions be given the benefit of the doubt." *Bell v. Cone*, 543 U.S. 447, 455 (2005). An application for habeas corpus cannot be granted for a person in custody pursuant to a state conviction unless the adjudication "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the State court proceedings." 28 U.S.C. § 2254(d). Thus, a court may grant habeas relief if the state court arrives at a conclusion that is contrary to a decision of the Supreme Court on a question of law, or if the state court decides a case differently than did

the Supreme Court on a materially indistinguishable set of facts. *Williams v. Taylor*, 529 U.S. 362, 405 (2000). This deferential standard of review also applies where the state court "put[s] forth a merits-based ground for denying post-conviction relief"—even if the court also posits an alternative, procedural ground for denying relief. *Moritz v. Lafler*, 525 F. App'x 277, 284 (6th Cir. 2013).

The appropriate measure of whether a state court decision unreasonably applied clearly established federal law is whether that state adjudication was "objectively unreasonable" and not merely erroneous or incorrect. *Williams*, 529 U.S. at 409-11; *see also Machacek v. Hofbauer*, 213 F.3d 947, 953 (6th Cir. 2000). "It bears repeating that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Harrington v. Richter*, 562 U.S. 86, 102 (2011). To obtain "habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 103.

## DISCUSSION

Respondent asserts Petitioner's grounds are all non-cognizable or procedurally defaulted. Petitioner, in response, contends the grounds are cognizable, and that he can overcome any default through a showing of cause and prejudice. The undersigned will first discuss the default of Grounds One through Seven, and then turn to whether Petitioner has shown cause and prejudice to overcome any default. Next, the undersigned will address the cognizability of Petitioner's remaining claim—Ground Eight.

Procedural Default

Respondent asserts Grounds One through Seven are each procedurally defaulted in at least one way, and Petitioner has not shown cause and prejudice to excuse any default. Petitioner, in reply, contends he can show cause and prejudice.

Petitioners must exhaust state court remedies prior to raising claims in federal habeas corpus proceedings. *See* 28 U.S.C. § 2254(b), (c). This requirement is satisfied when a petitioner has given "the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the state's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999). Exhaustion requires a petitioner to "fairly present" federal claims so that state courts have a "fair opportunity" to apply controlling legal principles to the facts bearing upon a petitioner's constitutional claim. *See id.*; *Picard v. Connor*, 404 U.S. 270, 275-77 (1971). In order to satisfy the fair presentation requirement, a habeas petitioner must present both the factual and legal underpinnings of his claims to the state courts. *McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000). The claims must also be presented to the state courts as federal constitutional claims. *Koontz v. Glossa*, 731 F.2d 365, 368 (6th Cir. 1984). In reviewing the state court proceedings to determine whether a petitioner has "fairly presented" a claim to the state courts, courts have looked to the petitioner's:

> (1) reliance upon federal cases employing constitutional analysis; (2) reliance upon state cases employing federal constitutional analysis; (3) phrasing the claim in terms of constitutional law or in terms sufficiently particular to allege a denial of a specific constitutional right; or (4) alleging facts well within the mainstream of constitutional law.

*Whitings v. Burt*, 395 F.3d 602, 613 (6th Cir. 2005).

Related to exhaustion is the issue of procedural default. First, a petitioner may procedurally default a claim by failing to comply with state procedural rules in presenting his claim to the

appropriate state court. *Lundgren v. Mitchell,* 440 F.3d 754, 763 (6th Cir. 2006) (citing *Wainwright v. Sykes,* 433 U.S. 72, 87 (1977)); *see also Maupin v. Smith,* 785 F.2d 135, 138 (6th Cir. 1986). If, due to petitioner's failure to comply with the procedural rule, the state court declines to reach the merits of the issue, and the state procedural rule is an independent and adequate grounds for precluding relief, the claim is procedurally defaulted. *Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006). Second, a petitioner may procedurally default a claim by failing to raise the claim in state court, and pursue that claim through the state's "ordinary appellate review procedures." *O'Sullivan*, 526 U.S. at 847. To fairly present claims in the Ohio courts, a petitioner must raise his federal constitutional claims in direct or delayed appeals to the Ohio Court of Appeals and the Ohio Supreme Court. *Clinkscale v. Carter*, 375 F.3d 430, 437 (6th Cir. 2004).

To overcome procedural default a petitioner must establish: 1) "cause for the default," and 2) "actual prejudice from it." *Hall v. Vasbinder*, 563 F.3d 222, 236 (6th Cir. 2009). "To show cause for the default, a petitioner must show more than mere error, he must establish a substantial reason to excuse the default." *Id.* Cause "must be something external to the petitioner, something that cannot fairly be attributed to him[;] . . . some objective factor external to the defense [that] impeded . . . efforts to comply with the State's procedural rule." *Coleman v. Thompson*, 501 U.S. 722, 753 (1991).

### *Grounds One, Four, Five, and Six*[2]

Ground One alleges ineffective assistance of trial counsel. Grounds Four and Five allege trial court error in allowing Petitioner's trial counsel to withdraw, and allowing substitution of counsel in contravention of court rules. Ground Six alleges the trial court erred in not holding a

---

2. Respondent also asserts that Grounds Four, Five and Six (and portions of Ground One) are non-cognizable. *See* Doc. 5, at 10-12. However, because the undersigned finds these grounds procedurally defaulted, there is no need to address cognizability.

hearing regarding a subpoena. Each of these claims was based on facts available to Petitioner at the time of his direct appeal, and thus, should have been raised in his direct appeal. *See Buell v. Mitchell*, 274 F.3d 337, 349 (6th Cir. 2001). As the *Buell* court explained:

> Ohio courts have set forth a default rule barring consideration of claims that should have been raised on direct appeal. *See Cole,* 443 N.E.2d at 171; *State v. Perry,* 10 Ohio St.2d 175, 226 N.E.2d 104, 108 (1967). Ohio courts have consistently held that claims that can be adjudicated based on facts in the record can only be presented on direct appeal. *See, e.g., State v. Lentz,* 70 Ohio St.3d 527, 639 N.E.2d 784, 785 (1994). This court has held that this rule is regularly and consistently applied by Ohio courts as required by the four-part *Maupin* test. *See Byrd,* 209 F.3d at 521–22.

*Id.* Petitioner did not raise these claims on direct appeal, *see* Ex. 13, Doc. 5-1, at 52-70, and any attempt to raise them now would be barred by *res judicata*, *see Perry*, 10 Ohio St.3d at 175-76. Thus, these claims are procedurally defaulted and may not be considered by this Court unless Petitioner has shown cause and prejudice to overcome the default.

> *Grounds Two and Three[3]*

Grounds Two and Three are related. Ground Two alleges Petitioner's guilty plea was not knowing, intelligent, and voluntary. Ground Three alleges the trial court abused its discretion in denying Petitioner's pre-sentence motion to withdraw his guilty plea. Petitioner raised these claims to the Ohio appellate court, *see* Ex. 13, Doc. 5-1, at 53, but failed to perfect a timely appeal to the Ohio Supreme Court, *see* Ex. 18, Doc. 5-1, at 125 (Ohio Supreme Court denial of motion for leave to file delayed appeal).

Preliminarily, these grounds were arguably not "fairly presented" to the Ohio courts. This is so because Petitioner did not present either ground as a federal constitutional claim, but argued them solely in the context of Ohio law. *See* Ex. 13, Doc. 5-1, at 59-65 (arguing the guilty plea

---

3. Respondent also asserts that Ground Three is non-cognizable. *See* Doc. 5, at 12. However, as the undersigned finds the claim defaulted, the Court need not address the cognizability of the claim.

process did not comply with Ohio Criminal Rule 11, and Ohio rules regarding motions to withdraw guilty pleas).

Even assuming, however, that Petitioner properly preserved these grounds by raising them before the Ohio appellate court, he defaulted them when he failed to timely appeal to the Ohio Supreme Court. *See Boerckel*, 526 U.S. at 848. Petitioner did seek to obtain a delayed appeal, *see* Ex. 17, Doc. 5-1, at 106-08, but the Ohio Supreme Court denied leave, *see* Ex. 18, Doc. 5-1, at 125. It is well-settled in the Sixth Circuit that the Ohio Supreme Court's unexplained entry denying a motion for delayed appeal "constitutes a[n adequate and independent state] procedural ruling sufficient to bar federal court review of [the] habeas corpus petition." *Bonilla v. Hurley*, 370 F.3d 494, 497 (6th Cir. 2004); *see also Stone v. Ohio*, 2017 WL 3594953 (6th Cir.) ("The Ohio Supreme Court's denial of a motion for leave to file a delayed appeal is an adequate and independent state-law ground barring federal habeas review of Stone's conviction and sentence.") (citing *Bonilla*, 370 F.3d at 496-97).

Thus, Petitioner's Second and Third grounds are procedurally defaulted and cannot be considered unless he can show cause and prejudice.

### Ground Seven

Ground Seven alleges ineffective assistance of appellate counsel. In Ohio, an ineffective assistance of appellate counsel claim must be raised in an Appellate Rule 26(B) "application to reopen." *See Carter v. Mitchell*, 693 F.3d 555, 564 (6th Cir. 2012) (citing *State v. Murnahan*, 63 Ohio St. 3d 60 (1992)). Petitioner attempted to do so here, but failed to comply with Rule 26(B)'s timing requirement, which requires the application be filed "within ninety days from journalization of the appellate judgment unless the applicant shows good cause for filing at a later time." Ohio App. R. 26(B)(1). The appellate judgment in Petitioner's case was issued November 12, 2015, *see*

Ex. 15, Doc. 5-1, at 87-102, and his application for reopening (and for delayed reopening) was not filed until February 17, 2016, *see* Exs. 19, Doc. 5-1, at 126-46, beyond the ninety day period.

The appellate court dismissed Petitioner's application, finding it untimely, and holding he had not demonstrated good cause for the untimely filing. *See* Ex. 23, Doc. 5-1, at 176-83; *Hedenberg*, 2016 WL 3194241.[4] The Sixth Circuit has recognized that the timeliness requirement of Ohio Appellate Rule 26(B) is an adequate and independent state ground. *Parker v. Bagley*, 543 F.3d 859, 862 (6th Cir. 2008); *see also Baker v. Bradshaw*, 495 F. App'x 560, 566 (6th Cir. 2012) ("[W]e have previously held that an untimely Rule 26(B) application is an adequate and independent state ground that results in a claim being procedurally defaulted."). Further, the Sixth Circuit has held an Ohio court's holding that a petitioner failed to establish good cause for purpose of Rule 26(B) is an adequate and independent state law ground foreclosing review of a federal constitutional claim. *Wilson v. Hurley*, 382 F. App'x 471, 475 (6th Cir. 2010); *Wogenstahl v. Mitchell*, 668 F.3d 307, 322 (6th Cir. 2012) ("Ohio law has provided sufficient guidance on what constitutes a 'good cause' for a late filing under Rule 26(B) and the time constraints of Rule 26(B) [have been] firmly established and regularly followed.") (internal quotations and citations omitted) (alteration in original).

Petitioner contends, however, that the state court "improperly invoked" the procedural bar and this Court should therefore "not uphold the appellate court['s] implementation of the bar." (Doc. 8, at 4) (citing *Richey v. Bradshaw*, 498 F.3d 344, 359 (6th Cir. 2007)). *Richey*, however, involved application of a different procedural bar. *Id.* at 359-60 (finding Ohio court "improperly invoked" res judicata rule when ineffective assistance of trial counsel claim depended on evidence

---

4. This is the last reasoned state court judgment on the issue, as the Ohio Supreme Court denied review. *See* Ex. 27, Doc. 5-1, at 220; *Ylst v. Nunnemaker*, 501 U.S. 797, 804 (1991).

outside the trial record). By contrast, here, the Ohio court applied the timeliness requirement and the "good cause" requirement of Rule 26(B) in the usual manner—applying state law. Although Petitioner takes issue with the Ohio court's conclusion regarding application of the procedural bar—arguing the state law cases cited therein do not "specifically address the argument . . . as it was presented to the appellate court" (Doc. 8, at 4)—it is not this Court's place to re-examine such a state law procedural ruling. *See Allen v. Morris*, 845 F.2d 610, 614 (6th Cir. 1988).

Thus, because Petitioner did not timely raise his ineffective assistance of appellate counsel claim—Ground Seven—before the Ohio courts, such a claim is procedurally defaulted and this Court may not consider it unless Petitioner can show cause and prejudice for the default.

<u>Cause & Prejudice</u>

Having concluded that seven of Petitioner's claims are procedurally defaulted, the undersigned turns to whether Petitioner can show cause and prejudice to overcome any of his defaults.

*Ground Seven*

As "cause" for his default of Ground Seven—ineffective assistance of appellate counsel—Petitioner asserts the same cause he asserted to the Ohio appellate court: that a broken copier in the prison prevented him from copying and printing his 26(B) application in a timely manner. *See* Doc. 8, at 6-7. In rejecting Petitioner's argument, the state appellate court explained:

{¶ 3} Herein, Hedenberg is attempting to reopen the appellate judgment that was journalized on November 12, 2015. The application for reopening was not filed until February 17, 2016, more than 90 days after journalization of the appellate judgment in *State v. Hedenberg, supra*. In an attempt to argue good cause for the untimely filing of the application for reopening, Hedenberg argues that:

(1) the appellant had inadequate access to the law library, legal resources, and cop[y]ing facilities;

18

(2) the appellant was delayed from being able to review the necessary parts of the record in order to support his claims;

(3) the appellant made an attempt to send the items "NEXT DAY" mail, but the institution did not facilitate the request.

{¶ 4} Hedenberg, however, has failed to establish any good cause for the untimely filing of his application for reopening. *State v. Kinder,* 8th Dist. Cuyahoga No. 94722, 2012–Ohio–1339. This court has long held that lack of legal counsel, when attempting to file an application for reopening, does not establish "good cause" for filing beyond the 90–day limitation. *State v. Hornack,* 8th Dist. Cuyahoga No. 81021, 2005–Ohio–5843. *See also Lamar.* Difficulty in conducting legal research or limited access to legal materials does not establish "good cause" for the untimely filing of an application for reopening. *State v. Houston,* 73 Ohio St.3d 346, 1995–Ohio–317, 652 N.E.2d 1018; *State v. Lawson,* 8th Dist. Cuyahoga No. 84402, 2006–Ohio–3939. A lack of legal training, effort, or imagination, and ignorance of the law do not establish "good cause" for failure to seek timely relief pursuant to App.R. 26(B). *State v. Farrow,* 115 Ohio St.3d 205, 2007–Ohio–4792, 874 N.E.2d 526.

{¶ 5} In addition, App.R. 26(B)(2)(d) requires "a sworn statement of the basis for the claim that appellate counsel's representation was deficient with respect to the assignments of error or agreements raised * * * and the manner in which the deficiency prejudicially affected the outcome of the appeal * * *." The sworn statement is mandatory, and the failure to include such an affidavit mandates denial of the application. *State v. Lechner,* 72 Ohio St.3d 374, 650 N.E.2d 449 (1995), and *State v. Franklin,* 72 Ohio St.3d 372, 650 N.E.2d 447 (1995).

*Hedenberg*, 2016 WL 3194241, at *1-2.

In an affidavit attached to his application for reopening, and again before this Court, Petitioner asserts, *inter alia*, that during the week in which he was trying to prepare and send his application, the only available copiers in the prison were broken. (Ex. 20, Doc. 5-1, at 149); *see also* Doc. 8, at 7. Petitioner asserts that once the copier was fixed, he requested that his application be sent "Next Day" so it would arrive in time. *Id.*; *see also* Ex. 20, Doc. 5-1, at 153. He also asserts he was told by prison staff that next day mail service was available. *See id.* To this end, Petitioner also filed a Motion to Expand the Record, seeking to introduce a service request for the prison library copier allegedly submitted on February 8, 2016 and resolved on February 18, 2016. *See*

19

Doc. 7; Doc. 7-2 (email message). In response, Respondent contends that Petitioner "fails to explain the delay from November 12, 2015 to February 8, 2016—a period of time some 85 days during which he could have prepared and filed a timely App. R. 26(B) application" and therefore "even were the Court to afford the broken copy machine as "cause" to excuse [Petitioner's] tardiness, it could only provide such cause beginning February 8, 2016, and does nothing to excuse [Petitioner's] utter lack of diligence in the pursuit of his claims before then." (Doc. 9, at 2-3).

It is, however, unnecessary to resolve this issue of cause, because even if the broken copier could serve as cause to excuse the procedural default of Ground Seven, Petitioner has not shown prejudice resulting from the default. That is, Petitioner cannot show the outcome would have been different had the appellate court heard his 26(B) application. In addressing Petitioner's ineffective assistance of appellate counsel claim, the state appellate court alternatively addressed the merits of that claim:

> {¶ 6} Finally, a guilty plea is a complete admission of a defendant's guilt. A counseled plea of guilty, which is voluntarily and knowingly given, removes the issue of factual guilt from the case. *State v. Siders,* 78 Ohio App.3d 699, 605 N.E.2d 1283 (11th Dist.1992). When a defendant enters a plea of guilty, all appealable errors that might have occurred at trial are waived unless the errors precluded the defendant from entering a knowing and voluntary plea. *State v. Barnett,* 73 Ohio App.3d 244, 596 N.E.2d 1101 (2d Dist.1991), citing *State v. Kelley,* 57 Ohio St.3d 127, 566 N.E.2d 658 (1991). A guilty plea waives the right to claim that a defendant was prejudiced by ineffective counsel, except with regard to any defects that caused the plea to be less than knowing and voluntary. *Id.* at 249, 566 N.E.2d 658; *see also State v. Ketterer,* 111 Ohio St.3d 70, 2006–Ohio–5283, 855 N.E.2d 48.

> {¶ 7} Herein, this court has already determined on appeal that:

>> In this case, the trial court fully complied with its duty to inform Hedenberg of his constitutional rights. The record also compels the conclusion that the trial court substantially complied with the other duties imposed by Crim.R. 11(C)(2). When Hedenberg told the trial court that he was taking medication, the court wanted the specific names and the reason he required them. The court also specifically asked Hedenberg if the medications compromised his understanding of the proceedings. When Hedenberg attempted to hedge his answer, the trial judge noted that she, too, took

20

medication for the same disease. After this, Hedenberg agreed that the medication did not affect his understanding. Under these circumstances, the trial court was not required to explore further the possible psychological effects of Hedenberg's medication for treatment of Lupus in order to determine that his guilty pleas were knowing, voluntary, and intelligent. *State v. Martin,* 8th Dist. Cuyahoga No. 66046, 1994 Ohio App. LEXIS 4569, 1994 WL 547735 (Oct. 6, 1994); *State v. McDowell,* 8th Dist. Cuyahoga No. 70799, 1997 Ohio App. LEXIS 113, 1997 WL 15254 (Jan. 16, 1997).

Hedenberg must also show that there exists a prejudicial effect resulting from the trial judge accepting his guilty plea. The test for prejudice is "whether the plea would have otherwise been made." *State v. Nero,* 56 Ohio St.3d 106, 108, 564 N.E.2d 474 (1990). Because the trial judge explicitly and clearly explained Hedenberg's rights and the results of his guilty plea, we cannot conclude that he would not have pleaded guilty. There is no evidence in the record that the trial judge did not comply in any way with the standards set forth in Crim.R. 11. The appellant understood the nature of his guilty plea, and the trial court did not unlawfully sentence him.

*Hedenberg* at ¶ 15.

{¶ 8} Because this court has already determined that Hedenberg's plea of guilty was entered knowingly, intelligently, and voluntarily, any claimed errors raised by Hedenberg are waived. *State v. Wells,* 8th Dist. Cuyahoga No. 100365, 2015–Ohio–297.

*Hedenberg,* 2016 WL 3194241, at *2-3 (quoting, *inter alia*, *Hedenberg*, 2015 WL 7075821, at *3). This determination is entitled to deference under the AEDPA standard. 28 U.S.C. § 2254(d), (e); *Moritz*, 525 F. App'x at 284.

Claims of ineffective assistance of appellate counsel are subject to the *Strickland* test, which requires a defendant to show both deficient representation and prejudice. *Mahdi v. Bagley,* 522 F.3d 631, 636 (6th Cir. 2008). (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). To meet his burden, "a petitioner must show that the performance of counsel fell below an objective standard of reasonableness and that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Burton v. Renico,* 391 F.3d 764, 773 (6th Cir. 2004) (internal quotation marks omitted). When evaluating

the issue of ineffective assistance of appellate counsel, we review the appellate proceedings to determine whether prejudice is shown. *Mapes v. Tate,* 388 F.3d 187, 194 (6th Cir.2004) (noting that prejudice is shown if "there is 'a reasonable probability that, but for his counsel's [failings] ..., [the defendant] would have prevailed on his appeal' ") (alterations in original) (quoting *Smith v. Robbins,* 528 U.S. 259, 285 (2000)). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Burton,* 391 F.3d at 773 (internal quotation marks omitted). The failure to raise an underlying claim in the appeal which would have been unsuccessful is not ineffective assistance of appellate counsel. *Meek v. Bergh,* 526 F. App'x 530, 534 (6th Cir. 2013).

As discussed above, the appellate court alternatively addressed the underlying claims in Petitioner's 26(B) application and found they would not have succeeded. *See Hedenberg*, 2016 WL 3194241, at *2-3. Thus, even if Petitioner could show cause (in the form of lack of access to a copier), he cannot show prejudice. That is, he cannot show "a reasonable probability"—that is, a probability sufficient to undermine confidence in the outcome—that but for counsel's failure to include these claims in his direct appeal, he would have prevailed. *Mapes*, 388 F.3d at 194.

Because Petitioner cannot show cause and prejudice to overcome the default of his ineffective assistance of counsel claim, and the evidence offered in support of Petitioner's motion to expand the record does not supply such cause and prejudice, Petitioner's Motion to Expand the Record (Doc. 7) is DENIED.

*Grounds One, Four, Five, and Six*

As cause to overcome the default of these grounds, Petitioner asserts ineffective assistance of appellate counsel for failure to raise them on direct appeal. Respondent asserts, correctly, that a

defaulted claim of ineffective assistance of appellate counsel cannot serve as cause to overcome a procedural default.

Although a Rule 26(B) application for reopening does not preserve the underlying claims raised therein, *Davie v. Mitchell*, 547 F.3d 297, 312 (6th Cir. 2008), an ineffective assistance of appellate counsel claim can constitute excusing cause for a procedural default, *Edwards v. Carpenter*, 529 U.S. 446, 451-52 (2000). "However, a claim that is itself procedurally defaulted cannot be used as cause to excuse another procedurally defaulted claim." *Goldberg v. Money*, 692 F.3d 534, 537 (6th Cir. 2012) (citing *Edwards*, 529 U.S. at 453); *see also Beuke v. Houk*, 537 F.3d 618, 631 (6th Cir. 2008) ("[T]he ineffective-assistance claim 'can serve as cause to excuse the procedural default of another habeas claim *only* if the habeas petitioner can satisfy the "cause and prejudice" standard with respect to the ineffective-assistance claim itself,' that is, only if the ineffective-assistance claim was not itself procedurally defaulted.") (quoting *Edwards*, 529 U.S. at 450-51).

Because, as explained above, Petitioner's ineffective assistance of counsel claim is procedurally defaulted, and he cannot show cause and prejudice to excuse *that* default, such a claim cannot serve as cause to excuse the default of Grounds One, Four, Five, and Six. *Edwards*, 529 U.S. at 451-52; *Goldberg*, 692 F.3d at 537; *Beuke*, 537 F.3d at 631.

*Grounds Two and Three*

In contrast to the above claims, these claims were presented initially on direct appeal. *See* Ex. 13, Doc. 5-1, at 53. As cause for his default of Grounds Two and Three, Petitioner asserts ineffective assistance of appellate counsel, arguing his counsel did not present the arguments fully or correctly. (Doc. 8, at 15-16).

23

However, these grounds were defaulted when Petitioner failed to timely appeal them to the Ohio Supreme Court. In his motion for leave to file a delayed appeal, Petitioner offered several reasons for the delay:

> Defendant requested of his cou[n]sel to file but counsel did not; Defendant is indigent and has had issues financing this appeal; Defendant is not knowledgeable [sic] of the law and had limited legal assistance; Defendant had legal material stolen from him that took time to replace; Defendant had postage stolen from him delaying his ability to post his appeal; Defendant had delays in obtaining discovery documents from his formal counsel.

(Ex. 11, Doc. 5-1, at 38). First, a Petitioner's *pro se* status, lack of legal assistance, and his resultant ignorance of the law or procedural requirements, is not sufficient to establish cause. *Bonilla*, 370 F.3d at 498. Second, although Petitioner asserted an ineffective assistance-type claim in the motion for delayed appeal ("Defendant requested of his cou[n]nsel to file but counsel did not"), he did not separately raise and exhaust an ineffective assistance of appellate counsel claim on these facts to the Ohio courts. *See* Ex. 19, Doc. 5-1, at 126-46. Thus, this cannot serve as cause here. *See Goldberg*, 692 F.3d at 537 (citing *Edwards*, 529 U.S. at 453). Moreover, as discussed above, Petitioner cannot use his procedurally defaulted ineffective assistance of appellate counsel claim to excuse this default.[5]

---

5. The undersigned also notes, as an aside, that the state court determination on this issue was not contrary to or an unreasonable application of federal law. When a guilty plea is not "voluntary and knowing, it has been obtained in violation of due process and is therefore void." *Boykin v. Alabama,* 395 U.S. 238, 243 n. 5 (1969) (citing *McCarthy v. United States,* 394 U.S. 459, 466 (1969)). Because a guilty plea is a waiver of certain constitutional rights, it must be a voluntary, knowing, and intelligent act "done with sufficient awareness of the relevant circumstances and likely consequences." *Brady v. United States,* 397 U.S. 742, 748 (1970). When evaluating the knowing and voluntary nature of a guilty plea, the United States Supreme Court has held that "[t]he standard was and remains whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." *North Carolina v. Alford,* 400 U.S. 25, 31 (1970). The Ohio court here found, based on the record, that "the trial court fully complied with its duty to inform Hedenberg of his constitutional rights" and "explicitly and clearly explained [his] rights and the results of his guilty plea". *Hedenberg*, 2015 WL 7075821, at *3. Moreover, the appellate court explained the trial court did not err in overruling Petitioner's motion to withdraw

<u>Actual Innocence</u>

A showing of actual innocence will excuse procedural defaults. *See McQuiggin v. Perkins*, 569 U.S. 383, 386-87 (2013). The Court explained:

> [A]ctual innocence, if proved, serves as a gateway through which a petitioner may pass whether the impediment is a procedural bar, as it was in *Schlup* and *House*, or, as in this case, expiration of the statute of limitations. We caution, however, that tenable actual-innocence gateway pleas are rare: "[A] petitioner does not meet the threshold requirement unless he persuades the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." *Schlup*, 513 U. S., at 329, 115 S.Ct. 851, 130 L.Ed. 2d 808; see *House*, 547 U. S., at 538, 126 S.Ct. 2064, 165 L.Ed. 2d. 1 (emphasizing that the *Schlup* standard is "demanding" and seldom met). And in making an assessment of the kind *Schlup* envisioned, "the timing of the [petition]" is a factor bearing on the "reliability of th[e] evidence" purporting to show actual innocence. *Schlup*, 513 U.S., at 332, 115 S.Ct. 851, 130 L.Ed. 2d. 808.

*Id.* The Sixth Circuit has described the kind of new evidence required to prevail on an actual innocence claim:

> "To be credible, such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Schlup*, 513 U.S. at 324, 115 S.Ct. 851. The Court counseled however, that the actual innocence exception should "remain rare" and "only be applied in the 'extraordinary case.' " *Id.* at 321, 115 S.Ct. 851.

---

his guilty plea where Petitioner: "had competent counsel who, in the face of the numerous and serious crimes alleged against his client, arranged for him an advantageous plea agreement", "the trial court substantially complied with its duties under [Ohio] Crim. R. 11 (C)(2) before accepting [Petitioner's] guilty pleas", and the trial court conducted a hearing, and gave consideration to Petitioner's motion to withdraw his guilty plea. 2015 WL 7075821, at *5. In response to the Court's question, "But when you stood before me, this Court reviewed with you your rights. Did you understand them?", Petitioner replied "Yes" and the trial court found Petitioner's plea to be knowing and voluntary. (Doc. 6-1, at 73). Even taking Petitioner's argument that he made a pre-plea statement to counsel rather than a post-plea statement regarding his desire to withdraw his plea, Petitioner has not shown the Ohio court's determination to be contrary to, or an unreasonable application of federal law.. 28 U.S.C. § 2254(d).

*Souter v. Jones,* 395 F.3d 577, 590 (6th Cir. 2005). Actual innocence means factual innocence, not mere legal insufficiency. *Bousley v. United States,* 523 U.S. 614, 624 (1998) (citing *Sawyer v. Whitley*, 505 U.S. 333, 339 (1992)).

Petitioner has presented no such new evidence of factual innocence, and thus may not use the actual innocence standard to excuse his procedural defaults.

<u>Non-Cognizable Claims</u>

Respondent also asserts several of Petitioner's claims are not cognizable in this habeas corpus proceeding because they are either: 1) based on alleged violations of state law, not federal constitutional law, or 2) based on actions prior to Petitioner's guilty plea. In Reply, Petitioner asserts the claims are cognizable. Because Petitioner's First through Seventh Grounds are procedurally defaulted as discussed above, the undersigned only addresses Petitioner's remaining claim—Ground Eight—herein.

The Court will not have jurisdiction over Petitioner's claims for purposes of habeas corpus review if they do not "challenge the legality of his custody" based on a "violation of the Constitution or law or treaties of the United States." 28 U.S.C. § 2254. Indeed, "[t]he writ of habeas corpus is not available to remedy errors of only state law." *Smith v. Morgan*, 371 F. App'x 575, 582 (6th Cir. 2010) (citing 28 U.S.C. § 2254(a)); *see also Norris v. Schotten*, 146 F.3d 314, 328 (6th Cir. 1998) ("[a] claim based solely on an error of state law is not redressable through the federal habeas process.") (quoting *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991)). Importantly, merely asserting a state law error violates the Federal Constitution is not sufficient to justify jurisdiction. *See Wilson v. Corcoran*, 562 U.S. 1, 5 (2010).

Nevertheless, habeas relief may be available if an alleged error of state law subjected the petitioner to a "fundamentally unfair" criminal process. *Williams v. Anderson*, 460 F.3d 789, 816

(6th Cir. 2006). "[T]he category of infractions that violate fundamental fairness is defined very narrowly", and includes only state rulings that "offend some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental." *Bey v. Bagley*, 500 F.3d 514, 521 (6th Cir. 2007) (quoting *Montana v. Egelhoff*, 518 U.S. 37, 43 (1977) (citations omitted)); *see also Wright v. Dallman*, 999 F.2d 174, 178 (6th Cir. 1993). The habeas petitioner bears the burden to show "the principle of procedure violated by the rule (and allegedly required by due process)" is fundamental. *Bey*, 500 F.3d at 521.

In Ground Eight, Petitioner alleges the Ohio appellate court erred in not reviewing his tardy application for reopening. (Doc. 1, at 23). Petitioner presents this argument solely on the basis of Ohio law. He argues, in essence, that the state court incorrectly found he did not meet the Ohio state law requirement of providing "good cause" to excuse the lateness of his application for reopening. *See* Doc. 1, at 23-24; Doc. 8, at 3-8. This, however, is a question of state law, and federal courts do not function as an additional level of appeal to review state courts' decisions on state law or procedure. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Allen v. Morris*, 845 F.2d 610, 614 (6th Cir. 1988).

Thus, according to the well-settled principle that rulings by state courts with respect to state law are binding on the federal courts, Petitioner's Eighth ground for relief is non-cognizable. *Wainwright v. Goode*, 464 U.S. 78, 84 (1983); *see also Allen v. Morris*, 845 F.2d 610, 614 (6th Cir. 1988). Further, Petitioner has not shown the state court's interpretation of its own law created a "fundamentally unfair" process, and, thus, the Court recommends Ground Eight be denied as non-cognizable. *See Bey*, 500 F.3d at 521; *Estelle*, 502 U.S. at 67-68.

### CONCLUSION AND RECOMMENDATION

Following review, and for the reasons stated above, the Court recommends the Petition be denied. Additionally, Petitioner's Motion to Expand the Record (Doc. 8) is DENIED.

s/James R. Knepp, II
United States Magistrate Judge

*ANY OBJECTIONS* to this Report and Recommendation must be filed with the Clerk of Court within fourteen days of service of this notice. Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation. *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985).